IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHELE HOLLY,<br><br>                    Plaintiff,<br><br>v.<br><br>KINDRED HEALTHCARE OPERATING, INC.,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.: 2:12-CV-01198-DN<br><br>District Judge David Nuffer |

Defendant Kindred Healthcare Operating Inc.[1] ("Defendant") filed a motion for summary judgment[2] ("Motion") requesting dismissal of Plaintiff Michele Holly's ("Holly") complaint.[3] Holly alleges that Defendant violated the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Utah Antidiscrimination Act ("UADA") when Defendant terminated Holly's employment in January of 2012.[4] After a careful review of the written memoranda submitted by the parties, oral argument is unnecessary since the Motion may be readily decided on the written submissions.[5]

---

[1] Defendant states that it was incorrectly sued under Kindred Healthcare Operating, Inc., and should instead have been sued under Kindred Nursing Center West, LLC d/b/a Kindred Transitional Care and Rehabilitation-Crosslands. *See* Answer to Complaint, docket no. 3, filed January 18, 2013. This distinction is immaterial for purposes of the present motion.

[2] Defendant's Motion for Summary Judgment and Memorandum in Support ["Motion"], docket no. 16, filed February 27, 2014.

[3] Complaint, docket no. 1, filed December 21, 2012.

[4] *Id.* at 11–13.

[5] *See* DUCivR 7–1(f).

## UNDISPUTED FACTS

The following facts are taken largely from Defendant's Motion.[6]  These facts are undisputed based on Holly's expressed admission of Defendant's proposed undisputed facts, or, because Holly has not actually denied fact and has not offered any evidence to dispute Defendant's properly supported undisputed facts.[7] Where facts offered by Defendant were properly disputed in Holly's response, those disputes have been removed by editing and the undisputed portions remain. Some minor edits and consolidations have been made to improve readability without changing meaning.

1.      Defendant is a residential facility that provides both short- and long-term health care to approximately 119 residents.[8]

2.      Holly began working for Defendant as a Certified Nursing Assistant ("CNA") in September 1991.[9]

3.      In April 2009, John Williams ["Williams"] became Defendant's Executive Director.[10]

4.      In April 2010, the Admissions Coordinator for Defendant left and Williams encouraged Holly to apply for the vacant position. Williams believed Holly would fit the job well. And shortly thereafter, Holly was promoted to the position of Admissions Coordinator.[11]

---

[6] Motion at 3–13.

[7] *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[8] Motion ¶ 1, at 3; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 2, docket no. 17, filed March 31, 2014 ["Opposition"] (undisputed).

[9] Motion ¶ 3, at 3; Opposition at 2 (undisputed).

[10] Motion ¶ 5, at 3; Opposition at 2 (undisputed).

[11] Motion ¶ 6, at 3; Opposition at 2 (undisputed).

5.      At her deposition, Holly claimed that her disability is hyperoxaluria.  This condition results in the body producing kidney stones.[12]

6.      Holly returned to work [from her FMLA leave] on January 16, 2012 with no restrictions.[13]

7.      Holly testified that when she returned to work she was physically able to do her job.[14]

8.      Before Holly returned to work, she mentioned to Julie Anderson ["Anderson"], during a telephone conversation, that she kept duplicate admission files in her office (the admissions office), and Anderson responded that Holly should not keep duplicate files in the admissions office.[15]

9.      Anderson never instructed Holly to discard or shred original files from the admissions office.[16]

10.      On January 18, 2012, two days after Holly returned to work, she took numerous admissions files and put them in shredder bins.[17]

11.      That same day, Tracy Reynolds ["Reynolds"], a nurse who had been performing some of Holly's duties while she was out, needed to obtain information for a recently admitted resident with whom she had been working.  Reynolds looked for the file in the admissions office

---

[12] Motion ¶ 7, at 4; Opposition at 2 (undisputed).

[13] Motion ¶ 12, at 5; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[14] Motion ¶ 13, at 5; Opposition at 2 (undisputed).

[15] Motion ¶¶ 16–17, at 5–6; Holly does not dispute ¶ 17, and as for ¶ 16, Holly does not address this numbered fact. Therefore, the Court takes ¶ 16 as undisputed for purposes of summary judgment.

[16] Motion ¶ 18, at 6; Opposition at 5. Although Holly claims to dispute this fact, she admits in her response that Anderson never instructed her to discard original files.

[17] Motion ¶ 19, at 6; Opposition at 5. Holly attempts to dispute this fact by stating that she was instructed by Anderson to shred duplicate files; her response does not create a dispute.

but could not find it. During her search, Reynolds also noticed that several other active files, which she had helped prepare, were missing.[18]

12.     While Reynolds looked for the missing files, another employee, Val[erie Ryan], informed her that Holly said she had been instructed to get rid of all of the files in the admissions office.[19]

13.     Reynolds searched the facility and eventually found 42 original active files in three separate shredder bins.[20]

14.     After finding the files in the shredder bins, Reynolds informed Williams that she had pulled 42 original files out of three separate shredder bins, and that Holly was the individual who had thrown them away.[21]

15.     Williams and Reynolds spoke to Holly and asked her why she had thrown the original files in the shredder bins. Holly responded that Anderson told her to throw away the files in the admissions office.[22]

16.     Given Holly's experience in this position, she should have known not to discard original files.[23]

17.     Holly should have been able to easily determine from the color of the paper in the files whether it was an original or a duplicate (originals have a pink sheet of paper on top).[24]

---

[18] Motion ¶ 20, at 6; Opposition at 2 (undisputed).

[19] Motion ¶ 21, at 6; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[20] Motion ¶ 22, at 7; Opposition at 5. This fact has been edited to remove Holly's dispute that it was her who actually discarded the original files.

[21] Motion ¶ 23, at 7; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[22] Motion ¶ 24, at 7; Opposition at 5. Holly purports to dispute this fact by arguing that Defendant has not established it was her who actually placed the original files at issue in the shred bins. Holly's response and the evidence she cites does not controvert this fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[23] Motion ¶ 25, at 7; Opposition at 2 (undisputed).

18.     When Williams asked Holly about the files she had thrown away, she denied throwing away any file with a pink form on the top.[25]

19.     Holly later admitted that she may have thrown away original files because she "did not go through the file" before discarding them.[26]

20.     According to Williams, the fact that Holly threw the files into three separate shred bins throughout the facility "was as clear an act of sabotage as [he'd] ever seen" and he believed she knew what she was attempting to destroy when she put them in the shredder bins.[27]

21.     Both Williams and Anderson believed Holly intentionally and purposefully discarded the original files.[28]

22.     Anderson immediately called Human Resources because destruction of property is grounds for immediate termination.[29]

23.     Following their investigation, Anderson and Williams jointly decided to terminate Holly's employment for placing original admissions packets into three separate shredder bins.[30]

24.     Williams notified Holly of this decision on January 24, 2012.[31]

---

[24] Motion ¶ 26, at 7; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[25] Motion ¶ 27, at 7; Opposition at 5–6. The fact has been edited to remove Holly's dispute with the word "initially" which suggests that Holly was deceitful.

[26] Motion ¶ 28, at 7; Opposition at 6. Holly does not dispute this fact, she simply argues that because of her reasonable belief she was disposing duplicate files, additional scrutiny of the discarded files was neither warranted nor instructed.

[27] Motion ¶ 29, at 7–8; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[28] Motion ¶ 30, at 8; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[29] Motion ¶ 31, at 8; Opposition at 6. This fact has been edited to remove Holly's dispute with the word "misconduct."

[30] Motion ¶ 33, at 8; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[31] Motion ¶ 34, at 8; Holly does not address this numbered fact. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[33] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[34] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[35]

**DISCUSSION**

**A.  ADA Discrimination Claim**

The ADA prohibits covered employers from discriminating against disabled individuals.[36] Claims that rely on circumstantial evidence to allege disability discrimination in violation of the ADA, as in the case here, are subject to the burden-shifting analysis originally established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*.[37] Under the *McDonnell Douglas* analysis:

> [I]f the employee establishes a prima facie case of discrimination, then a presumption of discrimination arises, resulting in the burden shifting to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the [employer] carries its burden of production, the presumption of discrimination drops out of the case, and "[t]he burden then shifts back to the [employee], who must prove by a

---

[32] Fed. R. Civ. P. 56(a).

[33] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[34] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[36] *See* 42 U.S.C. § 12112(a) (2009).

[37] 411 U.S. 792 (1973).

preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination.[38]

To establish a prima facie case of disability discrimination, a plaintiff must show: (1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability.[39]

Defendant contends that Holly cannot meet the first and third prongs of the prima facie case of disability discrimination.[40] Moreover, even if she could, Defendant maintains that Holly cannot demonstrate that Defendant's reason for discharging her—destruction of original files—is pretextual. Holly argues that she can establish a prima facie case of disability discrimination, and Defendant's purported reason for her termination is pretextual.[41] Because Holly cannot establish that Defendant's reason for terminating her employment was pretextual, the Court can assume, without deciding, that Holly has established a prima facie case of discrimination and focus solely on the question of pretext.

In order to rebut the presumption that arises upon the establishment of a prima facie case of discrimination, the second step of the *McDonnell Douglas* burden shifting analysis requires the employer to produce enough competent evidence, taken as true, to enable a rational factfinder to conclude that there exists a nondiscriminatory reason for the challenged employment action. Defendant has justified its action by stating that Holly's attempt to destroy original files was intended to sabotage the facility.[42] Holly concedes that Defendant has proffered a legitimate

---

[38] *Thomas v. Avis Rent a Car*, 408 F. App'x 145, 152 (10th Cir. 2011) (internal quotation marks and citation omitted).

[39] *See Kellogg v. Energy Safety Servs. Inc.*, 544 F.3d 1121, 1124 (10th Cir. 2008).

[40] Motion at 13–15.

[41] Opposition at 12–20.

[42] Motion at 15.

nondiscriminatory reason for Holly's termination,[43] which shifts the burden back to Holly to establish a genuine dispute as to whether Defendant's action was pretextual.

In making a determination of pretext, Holly must "present some affirmative evidence that disability was a determining factor in the employer's decision."[44] "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[45] However, "[w]hen assessing a contention of pretext, [the court] examines the facts 'as they appear to the person making the decision to terminate [the] plaintiff.'"[46] Hence, "the relevant inquiry is not whether [the employer's] proffered reasons were wise, fair[,] or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those believes."[47] The court should not "second guess an employer's business judgment."[48]

Holly makes several arguments in support of her pretext claim. To begin, Holly contends that the parties have vastly differing accounts of the events surrounding her termination.[49] Holly points out that while Anderson testified that she did not instruct Holly to shred any documents,[50] Holly's testimony at all times has been that she was told by Anderson that "all the duplicate files

---

[43] Opposition at 17.

[44] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[45] *Id.* (citation and internal quotation marks omitted).

[46] *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)).

[47] *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (citation and internal quotation marks omitted).

[48] *Id.*

[49] Opposition at 17.

[50] *See* Holly's Ex. P-2, Anderson's Dep. 69:2–22 ("I would never instruct an employee to dispose of any files. I instructed her she was not to keep duplicate files in the office. I did not instruct her to dispose of anything.").

in the filing cabinet and on the filing cabinet need to be placed in the shredder bins, and get rid of the filing cabinet . . . ."[51] Holly further argues that she has consistently testified that "she did not believe the documents she threw away were original copies[,]"[52] and "[h]undreds of people use those shredders."[53] Holly argues that if the court views the facts in the light most favorable to her, the pretext is that "Anderson first required [her] to complete a task, fired her for it, and then denied ever having done so."[54] Holly next claims that one trier-of-fact, the Administrative Law Judge ("ALJ"), "has already had the opportunity to assess which version of events was more credible, and found . . . Holly to be more trustworthy."[55] The ALJ's assessment of credibility, Holly argues, is an indication that a reasonable jury could infer that Defendant did not act for the asserted non-discriminatory reason. Holly also argues Defendant's prior treatment of her— threatening that she will lose her job for making medical appointments, not allowing her to use the restroom at times, and unreasonably requiring her to clear with management all medical appointments—provides evidence from which a jury could infer discriminatory motivation.[56] Lastly, Holly claims that Williams' refusal to accommodate her return on December 27, 2012, from an approved medical leave, contradicts Defendant's policy.[57] This, she asserts, is a procedural irregularity that can be used to infer discriminatory intent.

Because the employer's *perception of the facts* at the time of the decision to terminate controls, Holly's arguments are unavailing. The undisputed facts are that (1) Reynolds searched the facility and found 42 original active files in three separate shredder bins; (2) Reynolds

---

[51] Holly's Ex. G-1, Holly Dep. 185:1–5.

[52] Opposition at 18.

[53] Holly's Ex. G-6, Holly Dep. 198:25–199:1.

[54] Opposition at 18.

[55] *Id.* at 19 (citing Holly's Ex. V, Decision of Workforce Appeals Board).

[56] *Id.* at 20.

[57] *Id.*

informed Williams that she had found original files in shredder bins and that Holly was the individual who had thrown them away; (3) Williams *believed* that Holly knew what she was attempting to destroy when she put the files in the shredder; (4) both Williams and Anderson *believed* Holly intentionally and purposefully discarded the original files, (5) destruction of property is grounds for immediate termination, and (6) Anderson and Williams jointly decided to terminate Holly's employment for placing original admissions packets into three separate shredder bins.

Even if Holly was not the one that discarded the original files, the only conclusion permitted based on the undisputed facts, is that Defendant reasonably, although erroneously, believed that Holly intentionally and purposefully discarded the original files and terminated her accordingly. To show pretext, Holly must point to facts supporting a conclusion that Defendant's determination was "unworthy of credence[.]"[58] It is true that evidence of prior treatment and disturbing procedural irregularities[59] can support pretext, however, Holly's purported evidence does not raise to a level where it establishes "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's legitimate reason.

Holly's evidence that she was threatened with job loss comes from her deposition testimony where she states that Williams made "snipe" comments under his breath a couple of times during the summer of 2011.[60] These "snipe" comments allegedly occurred at least six months prior to Holly's termination and thus lack temporal proximity to the adverse employment action. As for Holly's assertion that she was not allowed to use the restroom at times, Holly's cited evidence reveals that there was only a single occurrence when Holly was required to wait a

---

[58] *Morgan,* 108 F.3d at 1323.

[59] *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005), as modified on denial of reh'g (Dec. 20, 2005).

[60] Opposition at 20 (citing Ex. G-15 & 16).

few hours before using the restroom because Williams was in a meeting and was not to be disturbed.[61] Likewise, Holly's claim that Williams unreasonably required her to clear all medical appointments with him prior to setting them does not permit a reasonable inference of discriminatory animus. It is not uncommon to require employees to clear appointments, from which they will be absent from work, with their employer. Finally, Williams' refusal to accommodate Holly's return on December 27, 2012 is insufficient to warrant an inference of pretext due to a procedural irregularity because Holly has failed to present sufficient evidence of a procedural irregularity. Holly argues that Hanson testified that a refusal to reinstate would be inconsistent with company policy, quoting: "Okay. Uh, would it contradict Kindred policy for him to say I can't take this, yes. Yes it would, if he said that."[62] Holly cites to Exhibit I-2 for the quoted language, however, the cited document does not actually contain the quoted language.

None of Holly's arguments raise a genuine issue of fact to discredit Defendant's good-faith belief supporting its legitimate, nondiscriminatory reason for terminating Holly's employment for discarding original client files. In sum, Holly has not demonstrated that any genuine issue of material fact exists as to pretext. Because Holly fails to satisfy her pretext burden, summary judgment is appropriate.

**B. ADA Retaliation**

Holly claims that she was retaliated against after engaging in activity protected by the ADA. Specifically, Holly alleges that she engaged in a protected activity when she requested a reasonable accommodation from Defendant, filed a complaint with the Utah Antidiscrimination and Labor Division ("UALD"), and when she opposed Williams' and Anderson's discriminatory

---

[61] Defendant's Ex. A, Holly's Dep. 141:23–143:16.

[62] Opposition at 20–21.

behavior and reported their behavior to the Defendant's Compliance Hotline.[63] Holly claims that she was terminated soon after these protected activities occurred.[64]

The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter."[65] In order to establish a prima facie case of retaliation under the ADA, the plaintiff must show: "(1) that she engaged in an activity protected by the statute; (2) that she was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; (3) that there was a causal connection between the protected activity and the adverse action."[66] Retaliation claims are subject to the *McDonnell Douglas* burden shifting approach discussed above.[67] Thus, "if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, i.e. unworthy of belief."[68]

"[I]n order to prosecute an ADA retaliation claim, a plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been

---

[63] *See* Complaint at 12; Opposition at 21.

[64] *Id.*

[65] 42 U.S.C. § 12203(b).

[66] *Selenke*, 248 F.3d at 1264 (citation and internal quotation marks omitted).

[67] *Stover*, 382 F.3d at 1070 ("[W]e analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework.").

[68] *Selenke*, 248 F.3d at 1264.

violated suffices."[69] Thus, a meritorious retaliation claim can stand even if the underlying discrimination claim fails.

In this case, the first two elements are satisfied. Holly engaged in a protected activity when she requested reasonable accommodation and filed a complaint with UALD and Defendant's Compliance Hotline for discrimination. And Holly's later termination by Defendant constitutes a materially adverse action. There remains only the third element. To prove the third element, Holly must establish a causal connection between her protected activities and her later termination. "The 'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination.'"[70] Holly relies on the temporal proximity between her protected activities and her later termination by Defendant as one relevant factor. Holly states that she filed a complaint with UALD on December 30, 2011 and requested reasonable accommodations on January 4, 2012. Because Holly's termination occurred less than a month after she engaged in these protected activities, Holly has satisfied the third element of her prima facie case.[71]

Having established her prima facie case of retaliation, the next step would be to continue with the burden shifting analysis as previously discussed in the analysis of the ADA discrimination claim. Here, it is undisputed that Defendant has come forward with a legitimate, nondiscriminatory reason for terminating Holly's employment.[72] Therefore the burden shifts

---

[69] *Id.* (citing *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA.")).

[70] *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1221 (10th Cir. 2002)).

[71] *Id.*

[72] Opposition at 17.

back to Holly to establish a genuine dispute as to whether Defendant's action was pretextual. Although temporal proximity is a relevant factor in determining whether an employer's explanation is a pretext for retaliation, that factor alone is insufficient to defeat summary judgment. "To raise a fact issue of pretext, . . . [the plaintiff] must . . . present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive."[73] Holly argues that the same evidence that establishes pretext for her ADA discrimination claim serves as supporting circumstantial evidence of retaliatory motive.[74] Here, Holly's retaliation claim fails for the same reasons previously articulated under the pretext analysis of Holly's ADA discrimination claim. That is, the undisputed facts establish that the cause of Holly's termination was Defendant's reasonable belief that Holly had intentionally discarded original files, and Holly's evidence of pretext is insufficient to create a genuine issue of material fact. Thus, Holly has failed to meet her burden of showing that a genuine dispute of fact exists as to whether Defendant's proffered non-retaliatory reason for termination was pretextual. Accordingly, Defendant is entitled to summary judgment on this claim.

### C. FMLA Interference

Holly also asserts a cause of action under 29 U.S.C. § 2615(a) of the FMLA.[75] "This circuit has recognized two theories of recovery under [29 U.S.C.] § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)."[76] Holly has only pled an interference claim arising from § 2615(a)(1).[77]

---

[73] *Metzler*, 464 F.3d at 1172.

[74] Opposition at 22.

[75] *See* 29 U.S.C. § 2615.

[76] *Metzler*, 464 F.3d at 1170.

[77] See Complaint at 13; Opposition Memorandum at 22–25. Aside from referencing § 2615(a)(2) in the Complaint, nothing else in the Complaint or Opposition Memorandum suggests Holly intended to bring a retaliation claim arising from § 2615(a)(2) instead of or in addition to her interference claim.

"To establish a claim for FMLA interference under § 2615(a)(1), an employee must show '(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.'"[78] "In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."[79] "Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave."[80] What is more, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."[81]

"If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'"[82] The employer, however, "is not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely unrelated."[83] Such that, an "indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery[.]"[84]

---

[78] *Dalpiaz v. Carbon Cnty., Utah*, No. 13-4062, 2014 WL 3686003, *4 (10th Cir. July 25, 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

[79] *Campbell*, 478 F.3d at 1287–88.

[80] *Dalpiaz*, 2014 WL 3686003, *4.

[81] *Smith v. Diffee Ford-Lincoln-Mercury, Inc.* 298 F.3d 955, 960 (10th Cir. 2002).

[82] *Dalpiaz*, 2014 WL 3686003, *4 (quoting *Campbell*, 478 F.3d at 1287).

[83] *Id.*

[84] *Id.* (internal quotation marks and citation omitted).

In this case, the first element of Holly's interference claim is not at issue.[85] She was entitled to leave. As for the second element of interference, Holly argues that Defendant interfered with her right to take FMLA leave on at least two occasions. Holly contends that the first occasion occurred when Holly attempted to return to work on December 27, 2014, after being on approved FMLA leave from December 2 through December 27.[86] The second occasion of interference allegedly occurred when Defendant terminated Holly's employment, thus "interfere[ring] with her right to exercise the [reduced workload] leave requested by . . . Holly, and certified by Dr. Putman in his request for FMLA."[87]

### 1. Denial of Reinstatement With Restrictions as Interference

Holly claims that on December 27, 2012, she returned to work with a doctor's note,[88] which stated that Holly was allowed to work with certain "restrictions."[89] Williams then informed Holly that she was not allowed to return to work with any restrictions in place.[90] Holly argues that Defendant interfered with her FMLA rights when it failed, on December 27, 2012, to reinstate her, with the restrictions, to her previous position.[91] Defendant contends, among other things, that "Holly is attempting to use the FMLA as an alternative means to justify an otherwise unreasonable ADA accommodation request."[92]

---

[85] Defendant, while addressing Holly's first FMLA interference claim—reinstatement with restrictions—does dispute whether Holly's condition amounted to a "serious health condition" entitling her to FMLA leave. *See* Reply at 23. Holly's first FMLA interference claim is, however, resolved on other grounds.

[86] Opposition at 23.

[87] *Id.* at 24.

[88] Certification of Health Care provide for Employee's Serious Health Condition, Holly's Ex. K.

[89] Complaint at 7.

[90] Complaint at 7–8; Opposition at 23.

[91] Opposition at 23.

[92] Reply Memorandum in Support of Defendant's Motion for Summary Judgment at 24, docket no. 20, filed April 17, 2014.

The FMLA guarantees an eligible employee twelve weeks of unpaid leave for a serious health condition that makes the employee unable to perform the functions of the position.[93] On return from such leave, the employee is entitled to be "restored by the employer to the position of employment held by the employee when the leave commenced;" or "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[94] However, there are limitations to an employee's right to reinstatement. One such limitation is when "the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA."[95] Under this limitation, "[t]he employer's obligation may, however, be governed by the Americans with Disability Act (ADA), . . . state leave laws, or workers' compensation laws."[96]

Thus, the rights created under the FMLA are different than those granted under the ADA. Unlike the ADA, the FMLA does not include a reasonable accommodation provision. The FMLA requires examination of the employee's ability to perform the essential functions of a position.[97] If an employee cannot perform the essential functions of her position, the employer is not obligated, pursuant to the FMLA, to accommodate the employee. The First, Third, Eighth and Eleventh Circuits have specifically addressed the present issue—that is, an employer's FMLA obligation to reinstate a returning employee to his or her same or an equivalent job with an ADA reasonable accommodation. All four circuits have rejected the blending of the FMLA's and ADA's standards.

---

[93] *See* 29 U.S.C. § 2612(a)(1)(D).

[94] 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214.

[95] 29 C.F.R. § 825.216(c).

[96] *Id.*

[97] *Id.*

The Eleventh Circuit, for example, rejected an FMLA reasonable accommodation argument, and ultimately concluded that "[t]o the extent that [the employee] argues that the failure to provide her with extended leave at the conclusion of her FMLA leave denied her of a reasonable accommodation, the reasonable-accommodation requirement under the ADA is distinct from [an] FMLA interference claim."[98] Similarly, the Eighth Circuit has held that "the FMLA omits any requirement that employers seek to reasonably accommodate employees who cannot perform the essential function of their respective positions."[99] Likewise, the Third Circuit observed that "[t]he FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his [FMLA] medical leave.'"[100] Finally, the First Circuit has noted that "it is not at all clear that the concept of 'reasonable accommodation' is applicable in the FMLA context," because "[u]nlike the ADA, . . . [the FMLA] omits the qualifying 'with or without reasonable accommodation' language."[101]

Defendant correctly notes that Holly has attempted to read the ADA's reasonable accommodation provision into her FMLA interference claim. Reasonable accommodation is not an entitlement guaranteed by the FMLA. Under the FMLA, Holly must show that she was able to perform the essential functions of her previous position to be entitled to reinstatement. Holly has failed to allege or argue that on December 27, when she requested reinstatement, she was able to perform the essential functions of her job. Holly cannot satisfy the second element of her interference claim by the denial of reinstatement with restrictions. Holly's reinstatement claim

---

[98] *Gilliard v. Ga. Dep't of Corr.*, No. 12–11751, 2012 WL 6115913, at *2 (11th Cir. Dec. 7, 2012) (quoting 29 C.F.R. § 825.702(a)).

[99] *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 865 (8th Cir. 2006) (citing former 29 C.F.R. § 825.214(b)).

[100] *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375 (3d Cir.2002)).

[101] *Tardie v. Rehab. Hosp. of Rhode Island*, 168 F.3d 538, 544 (1st Cir. 1999).

also fails because Defendant did reinstate Holly to her previous position on January 16, 2012, the date when Holly's work restrictions were lifted.[102]

## 2. Termination as Interference

Holly contends that on or about January 18, 2012, her physician submitted FMLA paperwork to Defendant which stated that "Holly should be eligible for intermittent leave moving forward from January 18, 2012."[103] Williams then contacted Holly and asked her to come into work on January 24, 2012, to discuss the restrictions outlined in her physician's FMLA paperwork.[104] Holly argues that instead of discussing her work restrictions, Williams terminated Holly's employment.[105] Holly contends that the termination of her employment was an interference of "her right to exercise the leave requested by . . . [her], and certified by Dr. Putman in his request for FMLA."[106] The termination could satisfy the second element of a FMLA interference claim because it is an "adverse action by the employer [that] interfered with . . . [Holly's] right to take FMLA [intermittent] leave."[107]

Since Holly has provided proof on the first two elements of her interference claim, the burden shifts to Defendant to produce facts showing that Holly would have been dismissed regardless of the employee's request for FMLA leave.[108] Holly claims that the temporal proximity between her FMLA request and her termination; the pattern of adverse employment actions taken by Defendant (suspending Holly when she attempted to return to work on

---

[102] *See* Holly's Ex. Q.

[103] Opposition at 24.

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] *Dalpiaz v. Carbon Cnty., Utah*, No. 13-4062, 2014 WL 3686003, *4 (10th Cir. July 25, 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

[108] *Dalpiaz,* 2014 WL 3686003, *4.

December 27, 2011 and terminating Holly's employment on January 24, 2012); and her testimony that Williams had made threatening comments that she would lose her job for taking leave, provide more than enough evidence to create a question of material fact whether her employment would have been terminated regardless of her FMLA request.[109] Here, only the "temporal proximity" argument has potential merit. Timing can be "particularly suggestive" in determining whether termination relates to the exercise of FMLA rights.[110] However, even taking into consideration the temporal proximity of Holly's dismissal, Defendant has nevertheless carried its burden of producing evidence that Holly would have been dismissed regardless of her FMLA claim.[111] "A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."[112]

In this case, it is undisputed that destruction of property is grounds for immediate termination, and that Holly's termination occurred after Williams and Anderson were informed that she discarded original client files. Holly has not come forward with any evidence nor raised any arguments to indicate that Defendant would have made a different adverse decision for the same type of conduct—discarding original files—outside of the FMLA context. Based on all of the evidence in the record, even when taken in the light most favorable to Holly, Defendant has met its burden of producing evidence that Holly would have been dismissed regardless of her request for an FMLA leave. Holly's termination as interference claim fails as a matter of law.

---

[109] Opposition at 25.

[110] *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1160 (10th Cir. 2009).

[111] *See e.g.*, *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1228–29 (10th Cir. 2012) (Noting that although Plaintiff was dismissed two days after requesting FMLA leave, the uncontroverted evidence established that Defendant's termination of Plaintiff's employment was unrelated to Plaintiff's request for FMLA leave).

[112] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004).

### D. UADA Discrimination

Holly, in her opposition to Defendant's motion for summary judgment, makes no argument in support of her UADA discrimination claim. Thus, she has abandoned this claim.[113] For this reason alone, it is proper to grant Defendant's motion for summary judgment with regard to this claim.

Even if Holly had responded to this claim, Defendant would have succeeded on the merits because "[a] plaintiff may pursue his or her claims under the UADA only through state administrative procedures."[114] Accordingly, Holly's UADA discrimination claim is dismissed both procedurally as well as on the merits.

### ORDER

IT IS HEREBY ORDERED that Defendant's motion[115] for summary judgment is GRANTED. The Clerk is further directed to close the case with prejudice.

Dated September 30, 2014.

BY THE COURT:

David Nuffer
United States District Judge

---

[113] *See Buckly Constr., Inc. v. Shawnee Civic & Cultural Dev. Authority,* 933 F.2d 853, 855 n. 2 (10th Cir.1991) (affirming trial court's dismissal of claims never addressed in the opposition memorandum).

[114] *McNeil v. Kennecott Utah Copper Corp.*, No. 2:08CV41DAK, 2009 WL 2554726 (D. Utah Aug. 18, 2009) *aff'd sub nom. McNeil v. Kennecott Holdings*, 381 F. App'x 791 (10th Cir. 2010); *see also* U.C.A. § 34a-5-107(15) & (16).

[115] Defendant's Motion for Summary Judgment and Memorandum in Support, docket no. 16, filed February 27, 2014.